UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, AT CINCINNATI

| | |
|---|---|
| **JOHN COLLIER** | : Case No. : |
| Plaintiff, | : |
| v. | : |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA** | : |
| Defendant. | : |

## COMPLAINT

Plaintiff, John Collier, for his Complaint against the Defendant, Unum Life Insurance Company of America, states as follows:

### Jurisdiction/Venue

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et seq*., to recover benefits due under employee benefit plans, to clarify the Plaintiff's rights to future benefits under such plans, and to recover attorneys' fees, costs, and interest.

2. This Court has subject matter jurisdiction pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

3. Venue is properly in this District in that the breaches took place in this District and Unum resides or may be found in this District.

### FACTUAL ALLEGATIONS

**Plaintiff's Participation In The Plan And LTD Claim**

4. Plaintiff Mr. Collier worked for Wichita Water Conditioning, Inc. d/b/a Culligan Water as a Sales / Installer at all relevant times.

5. As noted by Unum, Plaintiff's occupation was of a "highly complex nature that require[s] considerable specialized training or in-depth knowledge"; "speaking and acting persuasively to influence choices of others; making judgments and decisions requiring analysis of both subjective and objective information; interacting with people to communicate detailed information," as well as the ability to review, analyze, and recollect significant amounts of information, including complex or technical information.

6. Plaintiff's occupation was a "heavy" duty occupation in that it required being on the road as a significant part of his employment and installing water softener units which were heavier than 50 lbs a piece.

7. While employed by Culligan Water, Plaintiff was a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the long-term disability and life insurance policies sponsored by Culligan Water, under policy number 428188.

8. At all relevant times, the Plan provides for LTD Benefits and Life Insurance benefits; and Life Insurance Premiums are waived while a participant is disabled. The Plan is and was an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

9. At all relevant times, Unum is and has been the claims administrator of the Plan within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

10. At all relevant times, Unum has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

11. Upon information and belief, Unum is both the claims adjudicator and the claims payor, and operates under a conflict of interest.

12. Under the Plan, "Disabled" is defined as

- You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

13. Plaintiff progressively became disabled while at work and ultimately had to stop working completely in April 2022 due to a series of transient ischemic attacks ("TIAs") that significantly impaired his cognitive abilities, in addition to noted obstructive sleep apnea ("OSA"), high blood pressures, and body tremors, and arm numbness.

14. At the time Plaintiff stopped working, his job performance and sales commission had declined significantly, with colleagues and customers noting his cognitive changes.

15. As a result of Plaintiff's conditions, he is and remains disabled under the terms of the LTD Plan as of April 2022, at the latest.

16. Plaintiff applied for, and Unum approved, his claim for short-term disability benefits beginning in April 25, 2022 through July 28, 2022, finding him disabled from his own occupation.

17. Once his short-term disability benefits were exhausted, Plaintiff applied for LTD benefits and submitted to Unum all necessary Proof of Loss.

18. Despite finding Plaintiff disabled from his own occupation due to "obstructive sleep apnea and cognitive decline" from April 2022 through July 2022, Unum denied his LTD claim, finding he was not disabled from his own occupation during the same period of time, and beyond.

19. Plaintiff timely appealed the denial of LTD benefits and sent a multiple medical records supporting Plaintiff's continued disability, as well as records contradicting Unum's reasons for denying his claim.

20. Unum denied Plaintiff's claim on appeal by letter dated June 6, 2023, which constitutes a final appeal determination and Plaintiff has exhausted all administrative remedies available to him.

21. Both Unum's initial denial and appeal denial ignored the substantial medical evidence, failed to evaluate the proper plan terms and Plaintiff's correct occupational requirements, failed to take into consideration all relevant information available to it at the time of the denial(s), and cherry-picked the records it did consider. In addition, the denial letters failed to provide sufficient notice of its denial rational to Plaintiff, as required under ERISA and the claim regulations.

**Unum's Institutional Bias Manifests in LTD Claims**

22. Throughout this claim, Unum's hostile approach has been clear. One example is its extensive use of its own medical directors to review some of Plaintiff's medical records. These medical directors are Unum employees. None of them ever spoke with the Plaintiff or physically examined him. They are compensated in a manner designed to encourage them to deny claims, rather than fully and fairly review claims. This underlies a far greater problem - Unum treats its long-term disability claims department as an ongoing source of revenue.

23. Unfortunately, this is not surprising. Unum was the subject of substantial criticism and review in 2002-2004 for improper claims handling processes. A Multistate Market Conduct Examination was performed "to determine if Unum's disability income claims handling practices reflected systemic unfair claim settlement practices in violation of state laws governing the insurance industry.

24. After conducting a review of Unum's files, the multistate examination identified the following areas of concern: a. Excessive reliance upon in-house medical professionals; b. Unfair construction of attending physician or IME reports; c. Failure to evaluate the totality of the claimant's medical condition; and d. Inappropriate burden placed on claimants to justify eligibility for benefits. . . in which benefits were denied by the Companies on the grounds that the claimant had failed to provide "objective evidence" of a disabling condition.

25. The multistate investigation was resolved in November 2004. Unum agreed to comply with the terms of a Regulatory Settlement Agreement ("RSA") which required, among other things, that Unum increase its use of IMEs rather than relying so heavily on the opinions of its own employees. It failed to do so.

26. In 2005, after the RSA was created, Unum created a Performance Based Incentive Plan ("PBI") that it has since worked diligently to keep secret. The PBI has been "further developed, modified and refined over time." Thanks to the work of brave lawyers around the country, much is now public record. The 2005 UnumProvident Manager Toolkit ("2005 Toolkit"), for instance, documents the PBI. Unum outlined its business priority to give "attractive financial returns" to its owners. It created a Balanced Business Scorecard with targets for categories like:

1. Appeals Rate - what % of claims should be appealed

2. Appeals Upheld Rate - what % of appeals should be denied

5

3. New Litigation Rate - what % of claims should reach litigation

4. Reopen Rate - what % of claims should be reopened

27. For instance, the target appeals rate for LTD claims was 10-14%. The target appeals upheld rate was 80-85%. This meant that Unum expected only 10-14% of denied claims to be appealed. Unum expected 80-85% of appeals to be denied. Of the appeals denied, Unum expected less than 1.5% to get into litigation. With these targets, Unum aligned its employees' goals to "share in the company's success through the PBI".

28. Unum created a fixed pool for bonuses, in which one department's performance above target would reduce the other departments' bonus pool by that same amount. This created a race to the bottom as employees rushed to deny claims and appeals to meet these financial targets. Managers were assigned to "help employees line their performance plans with the business unit and company plan".

29. Although Unum claims that it no longer uses such a program, the evidence shows otherwise. The Unum Stock Incentive Plan of 2012 governs awards of common stock and incentive stock options for Unum employees based on performance goals, including loss ratio and earnings, among other measures.

30. A Committee is designated to administer the Plan and determine who gets the awards, the number of shares included in each award, and the terms and conditions of each award. Stock option and stock appreciation rights may be granted up to 1.2 million shares per year. Employment termination results in a penalty of requiring redemption of incentive stock options within 90 days of termination.

31. The 2015 Unum Annual Incentive Plan's goal is "to motivate the participants to perform in a way that will enable the Company to reach or exceed its goals". As before, the Plan

is based on the achievement of objectively determinable performance goals measured over 12 months.

32. A Compensation Committee has the authority to establish goals and target awards and increase, reduce, or eliminate cash incentive awards. It can also pay other additional amounts or compensation to employees. For the incentive (cash bonus based on percentage of salary or range of dollar amounts) award, the Committee can reduce it for failing to meet financial or other economic goals. It can also adjust the performance goals for incentive awards to "mitigate…the impact...of losses". In other words, if too many claims are paid, the Committee can adjust goals to offset those "losses".

33. Additional information and context to the 2015 Annual Incentive Plan is found in Unum's 2015 Proxy Statement. Annual incentive awards are created to motivate employees to achieve short-term corporate goals and individual objectives. This compensation is paid in cash. Long-term incentive awards are designed to motivate long-term performance and align the interests of management and stockholders. This compensation is awarded in restricted stock units and performance share units (PSUs) based on a corporate earnings threshold and individual performance. However, neither the short term nor long term incentives are paid unless Unum achieves a specified level of performance.

34. For 2014, the Compensation Committee established a $250 Million earning target performance requirement.

35. The 2015 Annual Incentive Plan and Proxy Statement prove that Unum continues to award cash bonuses and stock options based primarily on corporate profit objectives. The requirement of mandatory stock ownership means that Unum Medical Directors, who are senior

officers, are conducting claim reviews, knowing that their decision also impacts their own pocketbook.

36. Unum's approach has remained consistent. In 2018, Unum's PBI encouraged Unum employees to focus on "business value" and to think "with the mindset of a business owner" who is interested in "strong stewardship of the Company's financial resources". Employees are expected to support all business initiatives. Employee bonuses are capped at $8M.

37. Unum creates various weekly reports that track its directors' progress in closing claims, which it refers to as "recoveries". The weekly reports also compare the progress to a plan made by the finance department. The weekly reports give the director a projection of closing claims through the end of the month and tell the director if he or she is ahead or behind the plan. Directors are expected to know their progress, which is discussed in weekly meetings. Put another way, Unum Senior Unum officers are required to keep a fixed percentage of shares for a specified period and evaluates the performance of its directors based, at least in part, on the number of claims that they deny.

38. Each of these grounds was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other Unum policyholders and claimants.

39. Considering its financial conflict, Unum should be given little or no discretion in its claim decision.

40. Throughout this claim, the heavily biased nature of Unum's approach is clear in its extensive use of its own medical directors and consultants to review the Plaintiff's medical records. These medical directors and consultants are Unum employees, who are compensated in a manner designed to encourage them to deny claims, rather than treat them to a full and fair review.

41. Unum's denial of Plaintiff's claim was made without substantial supporting evidence, relying too heavily on paid file reviewers and in-house medical professionals. Its decision to terminate the Plaintiff's claim was based on its own biased findings despite of a wealth of well-documented medical and testimonial evidence to the contrary. At all material times, Unum was acting on behalf of the Plan and in its own capacity as the Insurer and Claims Administrator.

## Claim For Relief
## (ERISA §502(a)(1)(B))

42. Unum's denials constitute a breach of its obligation under the Plan and ERISA to pay LTD benefits to Plaintiff, and Plaintiff has exhausted all administrative remedies set forth in the Plan and required by ERISA.

43. Unum's repeated refusal to consider information submitted with Plaintiff's claims and appeals constitute a breach of its obligations under the Plan and ERISA.

44. Unum's reliance on information it considered when finding Plaintiff totally disabled from Any Occupation in order to deny his claim, without any improvement in Plaintiff's conditions is wrong, unsupported by the evidence, and arbitrary and capricious.

45. Unum's decision-making process at both the initial and administrative appeal phase did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. §1133 and 29 C.F.R. 2560.503-1.

46. Unum's denial of continued benefits and internal claims procedures outlined above constitutes unreasonable claim procedures, a breach of its obligations under the ERISA, the Plan, and the Claim Regulations and arbitrary and capricious denial of benefits.

47. It is Unum's burden to prove that *de novo* review is not applicable in this matter.

48. Even if the Plan grants sufficient discretionary authority to Unum, this Court should review the decision to terminate Plaintiff's claim for LTD benefits under a *de novo* standard of review because Unum failed to follow applicable ERISA regulations, the Plan's requirements and terms, and its own policies and procedures, and because Plaintiff was denied a full and fair review.

49. Alternatively, the denial of Plaintiff's LTD benefits and waiver of life insurance premiums was wrongful, arbitrary, and capricious, and not the product of a deliberate principled reasoning process, including Unum's wrongful disregard of the medical evidence and opinions of Plaintiff's own treating physicians; its inconsistent and irrational reliance on a third party file reviewer to deny benefits; relying on the medical opinions of conflicted and biased file reviewer, which conflicts with Plaintiff's treating physicians and Unum's own internal clinical review; failing to follow its own policies and procedures; refusing to consider all available information Plaintiff submitted with his claims and appeals; denying Plaintiff a full and fair review; wrongfully relying on a flawed and biased record for review.

50. Plaintiff is entitled to discovery to probe and ascertain the issues of procedural due process and conflict of interest and bias under which Unum reviewed and failed to properly adjudicate Plaintiff's claims for benefits and to complete the Administrative Record.

51. Plaintiff was and continues to be disabled as defined under the Plan.

52. As a result of the foregoing, Plaintiff has suffered losses in the form of unpaid benefits of an amount to be determined from approximately July 2022 to present, and continuing for as long as he remains disabled under the Plan or until his normal retirement age.

53. Plaintiff is entitled to a judgment against Defendant in the amount of the unpaid benefits under the Plan, and order finding him disabled under the Life Insurance Plan and entitled to a

waiver of life insurance premiums, as well as an order requiring the Plan to pay LTD benefits to him for as long as he remains disabled under the Plan, and reinstate him to the life insurance plan and LTD Plan.  Mr. Collier is further entitled to prejudgment and post judgment interest and an award of attorneys' fees and costs under ERISA § 502(g) in an amount to be proven.

WHEREFORE, Plaintiff requests the Court grant him the following relief from Defendant, Unum Life Insurance Company:

a) a judgment in the amount of all his past-due benefits under the Plan;

b) an order requiring the Defendants and/or the Plan to pay him benefits for as long as he remains disabled;

c) reinstatement to the Life Insurance plan with a waiver of all premiums;

d) his costs and attorney's fees; and

e) all other relief to which he is entitled, including a *de novo* review of the decision to deny the claim.

Dated: December 12, 2023

        s/ Claire W. Bushorn Danzl
        Claire W. Bushorn (OH Bar No: 0087167)
        **THE BUSHORN FIRM, LLC**
        810 Sycamore Street
        Cincinnati, Ohio 45202
        513.827.5771 – phone
        513.725.1148 – fax
        cbushorn@thebushornfirm.com
        *Trial Attorney for Plaintiff*